Filed 11/8/13  P. v. HernandezCA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056583 |
| v. | (Super.Ct.No. FSB1004724) |
| ANTONIO RIOS HERNANDEZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Duke D. Rouse, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gilette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and A. Natasha Cortina, Sean M. Rodriguez and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

San Bernardino County Sheriff's Deputy Paul Casas responded to a house belonging to defendant Antonio Hernandez to investigate a report that defendant had been in an altercation with his neighbor. When the sheriff's deputy arrived, defendant was intoxicated, belligerent and refused to cooperate. Defendant pushed his wife and Deputy Casas attempted to arrest him. Defendant hit the sheriff's deputy several times with a cane he was using because of recent knee surgery.

Defendant was convicted of assault with a deadly weapon and by force likely to produce great bodily injury on someone who he should have known or knew was a peace officer engaged in the performance of his duties (Pen. Code, § 245, subd. (c)).[1] Defendant was placed on three years of formal probation and was to serve 180 days in the San Bernardino County jail on a work release program.

Defendant now contends on appeal that the evidence was insufficient to support his conviction for assault on a peace officer, or in the alternative, the trial court's failure to sua sponte instruct the jury with a lesser included offense of non-aggravated assault with a deadly weapon requires reversal.

We affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# I

## FACTUAL BACKGROUND

A.     *People's Case-in-Chief*

On November 8, 2010, around 7:30 p.m., San Bernardino County Sheriff's Deputy Paul Casas responded to defendant's residence regarding an altercation that had occurred between defendant and his neighbor.  Both the defendant and the neighbor were injured during the altercation.  Prior to going to defendant's house, Deputy Casas spoke with defendant's neighbor and he told Deputy Casas he did not want to press charges against defendant.

Deputy Casas parked his patrol car in front of defendant's residence.  Deputy Casas's  marked sheriff's patrol car had lights on top and law enforcement insignia on the side.  He was in full uniform with a badge.

Defendant was outside the home leaning on a pillar.  Defendant's son, Oscar Rios, and defendant's wife, Elvia Rios, were also in the driveway.  Defendant was using a cane because he had knee surgery three weeks prior to this incident.

Defendant was immediately belligerent and appeared intoxicated.  He told Deputy Casas to look at his eye, which was bleeding "pretty heavily."  Defendant told Deputy Casas that he had been in a fight with his neighbor and someone had thrown something that hit his eye.  Defendant was speaking in both English and Spanish.  Oscar attempted to translate.

Defendant ignored Oscar. Defendant pointed to his truck and yelled at Deputy Casas to look at his truck, which he claimed had been damaged during the altercation with the neighbor. Oscar continued to translate and tried to calm defendant. Deputy Casas, at some point, told defendant to shut up.[2]

Deputy Casas informed Oscar and Elvia that the neighbor did not want to press charges against defendant. He asked Elvia and Oscar if they wanted anything done and they responded they did not. They both told Deputy Casas that they would try to get defendant in the house and Deputy Casas agreed this was a good idea. Deputy Casas headed back to his patrol car and was prepared to leave.

Elvia put her hands on defendant's chest and stomach trying to move him into the house. Defendant yelled to Deputy Casas about his freedom of speech and that he still wanted him to look at his truck. Defendant initially went with Elvia but then stopped. Defendant pushed Elvia down to her knee.

Deputy Casas immediately determined that he was going to arrest defendant.[3] Deputy Casas approached defendant. Deputy Casas insisted he told him that he was going to place him under arrest. Elvia stepped between defendant and Deputy Casas and begged him not to arrest defendant. Deputy Casas moved her out the way.

---

[2] Deputy Casas could not recall if he told defendant he would arrest him if he did not shut up.

[3] Deputy Casas stated he would arrest anyone he saw push his or her spouse because it was a violation of the law.

Deputy Casas grabbed defendant's arm in order to put him in handcuffs. Defendant lifted his cane and hit Deputy Casas's left shoulder. Deputy Casas felt dizzy and stepped back. Deputy Casas "hunched" over and grabbed his shoulder. Defendant swung the cane at Deputy Casas again and the cane broke.

Deputy Casas used his Taser and deployed darts at defendant's chest. It did not stop defendant, who continued to come toward Deputy Casas. Defendant still had his cane that had a broken tip and Deputy Casas surmised it could easily be used as a stabbing weapon.

At that point, Deputy Casas got out his gun and pointed it at defendant advising him to drop the cane. He also requested backup on the radio he had on his person. Deputy Casas then put away his gun and grabbed defendant to try to get him on the ground. Deputy Casas informed him that he needed to put his hands behind his back so that he could put handcuffs on the defendant. They continued to struggle and Deputy Casas again had to use his Taser against defendant's body.

Oscar and Elvia tried to get Deputy Casas off the defendant. Deputy Casas eventually was able to handcuff defendant but was unable to get him off the ground. Other deputies responded and put defendant in the back of his patrol car.

After defendant was placed in the patrol car, he calmed down. Defendant admitted to Deputy Casas that he had three shots of tequila that day and was on pain medication for the knee surgery. He apologized to Deputy Casas for hitting him with his cane and said that he respected law enforcement.

Deputy Casas had a bruise on his elbow from struggling with defendant on the ground. He had an eight-inch contusion on his shoulder caused when defendant hit him with the cane. He took the next day off from work and was sore for a couple of days. Deputy Casas did not have a baton and did not use his flashlight during the altercation.

For the first time at trial, Oscar claimed that defendant's cane was broken when defendant hit it against a door, not from hitting Deputy Casas. Oscar admitted that he apologized for defendant's behavior on that night and stated that defendant had gone "crazy" after the fight with his neighbor. Oscar heard Deputy Casas tell Elvia several times to back off. Oscar did not see Elvia fall to the ground. Oscar also claimed that when Deputy Casas pulled out his gun, he told defendant that he would kill him.

B.     *Defense*

Defendant testified on his own behalf. Deputy Casas came to his house at approximately 8:00 p.m. Defendant admitted taking three shots of tequila and pain medication that day. Defendant told Deputy Casas that he wanted to file a police report about the assault by his neighbor. Deputy Casas told him to shut up and would not let him make a report. Deputy Casas called defendant and his family "'Wetbacks.'" Deputy Casas told defendant he was going to be arrested if he did not shut up. Defendant was upset and hit a door with his cane. Deputy Casas pulled out his Taser and shot him. Deputy Casas kicked defendant until he fell down.

Defendant claimed that from the moment Deputy Casas came to his house, he was yelling and not acting like a law enforcement officer. Defendant admitted he may have hit Deputy Casas with the cane as he was falling to the ground. Deputy Casas hit him in

6

the head with his flashlight after he was handcuffed. Defendant also claimed that Deputy Casas told him he was going to take him to Tijuana because he knew someone there who would kill him.

Elvia testified on behalf of defendant. Elvia observed Deputy Casas arguing with defendant and telling him to shut up. She denied that defendant ever hit or pushed her that night. Deputy Casas never told defendant why he was arresting him. Deputy Casas hit and kicked defendant. Elvia told him several times to stop. Elvia tried to intervene and was pushed to the ground by Deputy Casas. Elvia saw Deputy Casas point his gun at defendant and tell him that he was going to kill him. She also observed Deputy Casas hit defendant with his flashlight. She never saw defendant hit Deputy Casas with his cane.

Joel Bernal was defendant's neighbor. He was home when he heard screaming coming from defendant's home. He went outside to observe defendant being pulled by an officer. At some point they fell to the ground and the officer pointed a gun at defendant, Elvia and Oscar. Defendant was handcuffed and on the ground. The officer pulled defendant by his arm. Bernal believed that the officer hit defendant with his flashlight one time, but later stated he was not sure if he used it on him. He also saw Elvia get pushed to the ground by the officer. Bernal did not observe anything that occurred prior to this part of the altercation.

Art Vasquez was an investigator employed by the San Bernardino County Public Defender's office. Vasquez interviewed Bernal prior to his testimony at trial. Bernal had told him that he saw the officer hitting defendant with his flashlight.

C.    *Rebuttal*

Deputy Casas was called back for rebuttal.  He was never disciplined in this case for using excessive force or for any other reason.  Defendant, from the moment the deputy arrived, was belligerent and clearly intoxicated.  Deputy Casas admitted that he told defendant to "shut up" so that he could complete his investigation, and calm defendant.  Deputy Casas never threatened to kill the defendant.

II

INSUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence presented was insufficient to support his conviction of assault on a peace officer with a deadly weapon with force likely to produce great bodily injury within the meaning of section 245, subdivision (c), because defendant reasonably believed that Deputy Casas was acting outside the scope of his duties.  He also argues, in the alternative, that reversal is required because the trial court had a sua sponte duty to instruct the jury with the lesser included offense of assault with a deadly weapon.[4]

---

**4**    We note that defendant's opening brief is almost indecipherable as he spends an inordinate amount of the briefing discussing voluntary intoxication, but then admits that the California Supreme Court has stated it is not generally a defense, and further, that he was not entitled to an involuntary intoxication defense based on the facts of the case.

A.      *Sufficiency of the Evidence*

"Our task is clear.  'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - - that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  The standard of review is the same in cases in which the People rely mainly on circumstantial evidence.  [Citation.]  "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'  [Citations.]"  [Citation.]'  [Citations.]  The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'  [Citation.]"  (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 245, subdivision (c), states:  "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the

performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years."

The jury was instructed that "[t]he People have the burden of proving beyond a reasonable doubt that Deputy Paul Casas was lawfully performing his duties as a peace officer. If the People have not met this burden, you must find the defendant not guilty of assault on a peace officer as charged in Count 1. A peace officer is not lawfully performing his duties if he or she is not lawfully arresting someone or using reasonable[5] or excessive force when attempting to make or making an otherwise lawful arrest or detention." It was further instructed, "A peace officer may use reasonable force to arrest, to overcome resistance or in self-defense. If a person knows or reasonably should know that a peace officer is arresting him, the person must not use force or any weapon to resist an officer's use of reasonable force. If a peace officer uses unreasonable or excessive force while arresting or attempting to arrest a person, that person may lawfully use reasonable force to defend himself."

Deputy Casas arrived in full uniform and his marked patrol car. There was no dispute that defendant was belligerent and intoxicated. Deputy Casas was in the process of leaving when he observed defendant push Elvia. Deputy Casas testified that he told defendant he was being arrested for pushing his wife. Even if Deputy Casas said nothing to defendant, defendant knew or reasonably should have known that Deputy Casas was acting as a peace officer when he came toward him attempting to handcuff him.

---

**5**      The instruction states "unreasonable" force; the trial court clearly misspoke.

10

Further, the testimony by defendant and his family that they did not know the reason why defendant was being arrested or that the deputy used excessive force that entitled defendant to hit him with a cane, simply was not believable. Defendant could not honestly believe he could push his wife in front of a law enforcement officer and not be arrested. Moreover, defendant had no injuries even though he claimed he was hit in the head with Deputy Casas's flashlight. If Deputy Casas actually used excessive force against defendant, Oscar would not have apologized to Deputy Casas for defendant's behavior.

"[I]t is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) Even when there is a significant amount of countervailing evidence, the testimony of a single witness can be sufficient to uphold a conviction. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) Here, the jury accepted Deputy Casas's testimony and we are not in a position to reverse such a determination. Moreover, the evidence strongly supported that defendant knew or reasonably should have known that Deputy Casas was performing his duty by arresting defendant for pushing Elvia, and used force against defendant (who was belligerent and intoxicated) that was reasonable in order to effectuate the arrest.

More than substantial evidence supports defendant's conviction in this case.

B. *Lesser Offense Instruction*

Defendant contends, if we reject his sufficiency claim, that the trial court erred by failing to sua sponte instruct the jury with the lesser included offense of assault with a deadly weapon or instrument which likely will produce bodily injury pursuant to section 245, subdivision (a). This crime does not require that defendant knew or reasonably should have known that Deputy Casas was acting as a peace officer.

Initially, defendant did not set forth this argument in a separate heading as required by California Rules of Court, rule 8.204(a)(1)(B). As the argument is not presented under a separate heading, we may deem it forfeited. (See *People v. Roscoe* (2008) 169 Cal.App.4th 829, 840.) Despite this defect, we will address the contention briefly.

Generally, a trial court must, even in the absence of a request, instruct on the lesser included offenses of any charged crimes. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1007-1008.) A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense such that the greater cannot be committed without also committing the lesser. (*People v. Moon* (2005) 37 Cal.4th 1, 25-26.) The trial court's sua sponte duty arises even if the defendant objects to the instruction and regardless of the defendant's theory of defense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162-163 & fn. 9.)

Section 245, subdivision (a)(1), non-aggravated assault with a deadly weapon provides: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." We previously set forth the language of section 245, subdivision (c). The completed offense of assault with a deadly weapon on a peace officer necessarily includes an assault with a deadly weapon. Both parties agree that non-aggravated assault with a deadly weapon is a lesser included offense of assault with a deadly weapon on a peace officer.

However, we have already explicated the strong evidence supporting that defendant knew or should have reasonably been aware that Deputy Casas was performing his duties as a peace officer. There simply was no support for the lesser included offense instruction. Moreover, even if we were to conclude that the trial court erred by failing to instruct the jury with the lesser included offense, any error was not prejudicial because the evidence does not absolve defendant of the greater offense. (*People v. Breverman, supra,* 19 Cal.4th at p. 178 ["in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [ *People v.*] *Watson* [(1956) 46 Cal.2d 818, 836]".) In analyzing prejudice, we consider "not . . . what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration." (*Id*. at p. 177.) We conclude, based on all the evidence we

13

set forth, *ante*, that the jury would have found defendant guilty of violating subdivision (c) of section 245 even with the option of non-aggravated felony assault as a lesser offense.  We reject defendant's contention.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
                                                                    J.

We concur:

McKINSTER
                Acting P. J.

MILLER
                    J.